JON M. SANDS
Federal Public Defender
DEIRDRE M. MOKOS
State Bar No. 016268
deirdre_mokos@fd.org
ELENA M. KAY
State Bar No. 026391
elena_m_kay@fd.org
407 W. Congress, Suite 501
Tucson, AZ 85701-1310
Telephone: (520) 879-7500
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Martel Alvarez-Chavez,<br><br>　　　　　Defendant. | **CR92-0113-PHX-NVW**<br><br>**DEFENDANT'S SUPPLEMENTAL MEMORANDUM** |

On August 20, 1992, a jury convicted Martel Alvarez-Chavez of conspiracy to distribute five kilograms or more of cocaine. (PSR p. 1). Mr. Alvarez-Chavez qualified as a career offender, which enhanced his guidelines sentence. (PSR par. 34). Nonetheless, this guidelines enhancement was irrelevant because the government's filing under 21 U.S.C. § 851 alleged two prior felony drug convictions carrying a mandatory sentence of life. (PSR par. 2-5). Accordingly, Mr. Alvarez-Chavez was sentenced to life imprisonment.

In January 2020, the now 62-year-old Mr. Alvarez-Chavez filed a motion with this court requesting compassionate release. On February 13, 2020, the government filed its response. After being appointed to assist Mr. Alvarez-Chavez in this matter, the

Office of the Federal Public Defender filed a reply to Mr. Alvarez-Chavez's motion on May 6, 2020.

The same day, the Court ordered Mr. Alvarez-Chavez to submit a supplemental memorandum addressing whether compassionate release can be granted "on the bases that th[e] court disagrees with the original sentence or that the original mandatory sentence has since been repealed without statutory authorization to resentence closed cases within the new statutory minimum." Mr. Alvarez-Chavez files this supplemental briefing in response to that order.

**ARGUMENT**

**I.  The change in the law regarding mandatory minimum sentences in drug cases, or the Court's disagreement with the original sentence in this case, constitute an extraordinary and compelling reason that permits this Court to re-sentence Mr. Alvarez-Chavez to time served pursuant to 18 U.S.C. § 3582(c)(2)(A)(i).**

18 U.S.C. § 3582(c)(1)(A)(i) vests this Court with the authority to reduce *any* sentence to time served if the Court determines that "an extraordinary and compelling reason other than, or in combination with", a person's age, medical condition, or family circumstances merits such relief. U.S.S.G. 1B1.13, app. n.1(D). Such reasons clearly exist in this case because Mr. Alvarez-Chavez received a mandatory life sentence on a charge that no longer carries that penalty following the enactment of the First Step Act.

2

**A. Extraordinary and Compelling Reasons are not Limited to a Specific, Enumerated Set of Circumstances.**

The history of compassionate release is explained in more detail in Mr. Alvarez-Chavez's reply brief so defense counsel will not repeat that history here. As a brief summary, however, the First Step Act ("Act") changed the compassionate release regime to allow more eligible, non-dangerous individuals, like Mr. Alvarez-Chavez, to be released from prison. Essentially, "the Act was passed against the backdrop of infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants" and sought to expand the use of compassionate release in two ways. *See United States v. Redd*, No. 1: 97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). First, the Act allowed defendants to petition to district courts directly, rather than having to wait for the BOP to act. Second, the Act gave the courts themselves greater discretion to grant release in certain circumstances. Specifically, under section 3582(c)(1)(A)(i), a sentencing court may now reduce a defendant's sentence "after considering the factors set forth in 3553(a) to the extent that they are applicable," if it finds, among other things, that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . ." *See also* U.S.S.G. 1B1.13, app. n. 4 (stating that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and "encourage[ing]" the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note").

3

Section 3582(c)(1)(A) does not define "extraordinary and compelling" reasons. And, Congress's instructions to the Sentencing Commission included only one limitation: that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 18 U.S.C. § 994(t) (emphasis added); *see also* U.S.S.G. 1B1.13 cmt. n.3. Consistent with this instruction, the policy statement includes no other limitation on what may be "extraordinary and compelling reasons" warranting relief, which allows the district court the freedom to make the determination in a case like this. *See id.*, 1B1.13 & cmt., nn.1-5.

The Sentencing Commission's policy statement makes it clear that extraordinary and compelling reasons are not restricted to finite circumstances. The policy statement contains four provisions that delineate extraordinary and compelling reasons, including age, medical reasons, family circumstances, and a catchall provision. *See* U.S.S.G. 1B1.13, app. n. 1. The catchall provision, entitled "Other Reasons," broadly encompasses "an extraordinary and compelling reason *other than, or in combination with*" a person's age, medical condition or family circumstances. *Id.* at 1(D) (emphasis added). While the catchall provision contemplates that such other reasons be determined by the Director of the BOP, the policy statement's deference to BOP regarding the procedure and standards for compassionate release is outmoded and irreconcilable with the text and purpose of the amended statute, which "trumps the Guidelines." *Dorsey v. United States*, 567 U.S. 260, 266, 132 S. Ct. 2321, 2327, 183 L. Ed. 2d 250 (2012). Indeed, the Commission has not updated section 1B1.13 since the

enactment of the First Step Act because it lacks the quorum necessary to amend the guidelines. *See United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *2 n. 1 (S.D. Tex. June 24, 2019). Accordingly, those portions of the policy statement limiting the determination of other circumstances warranting compassionate release to the discretion of the Director of the BOP to "no longer explain an appropriate use" of section 3582(c)(1)(A) and must be read out, as they conflict with the statute. *See e.g. United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) (vesting the Director of the BOP with authority to determine whether extraordinary and compelling reasons are present "no longer describes an appropriate use of sentence-modification provisions and thus is not part of the applicable policy statement binding the Court"); *see also United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *7 (W.D.N.Y. Apr. 20, 2020) (noting that there is a "growing consensus" that when "a defendant brings a motion for sentence reduction based on extraordinary and compelling circumstances, the court effectively steps into the shoes of the BOP director, and makes its own determination" whether extraordinary and compelling reasons exist).

**B. The disparity between a defendant's actual sentence and what he would face today for the same conduct can be considered an "extraordinary and compelling" reason to grant compassionate release.**

Were Mr. Alvarez-Chavez sentenced today, instead of the early 90s, he likely would not have received a sentence of life imprisonment. Importantly, courts around the country have held that sentencing disparities that result from a change in the law constitute "extraordinary and compelling" circumstances sufficient to warrant a sentence

reduction under Application Note D.  *See e.g. United States v.* Hope, No. 90-cr-06108-KMW, Dkt. 479 at 8-9 (S.D. Fla. Apr. 10, 2020) (granting compassionate release to drug and § 924(c) offender sentenced to life imprisonment, based, inter alia, on sentencing disparities created by *Apprendi* and Section 401, explaining that the defendant's "original, mandatory life sentence represents the type of sentencing disparity that the First Step Act was enacted to redress – as demonstrated by the fact that if sentenced today his *maximum* statutory sentence would be 35 years, his *maximum* guidelines sentence would be 32 years, and he has already served nearly 30 years in prison."); United *States v. Owens*, No. 97-CR-2546-CAB, ECF No. 93 at 5 (S.D. Cal. Mar. 20, 2020) (finding that "extraordinary and compelling reasons exist for a reduction in defendant's sentence based on the changes in how 924(c) sentences are calculated as a result of the First Step Act"); *Redd*, 2020 WL 1248493, at *5 (finding "extraordinary and compelling reasons" based on "the sentence [the defendant] received relative to the sentence he would now receive for the same offense" after Section 403 of the First Step Act eliminated enhanced penalties for defendants convicted for the first time of multiple § 924(c) charges in the same indictment); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *7 (M.D. Tenn. Mar. 4, 2020) (finding "extraordinary and compelling reasons" based in part on the fact that "Congress has expressly renounced the interpretation of § 924(c) that resulted in [the defendant's] lengthy sentence"); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *1-2 (D. Kan. Feb. 21, 2020) (determining "extraordinary and compelling reasons" existed "in light of

6

the [First Step Act's] modification of sentencing for offenses under § 924(c)"); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121 at *7 (D. Utah Feb. 18, 2020) (concluding that "the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here"); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed [due to the changes to § 924(c) penalties]."); *see also United States v. Brown*, 411 F. Supp. 3d at 451 (S.D. Iowa 2019) ("[A] district court assessing a compassionate release motion may still consider the resulting sentencing disparity [from changes to § 924(c) sentences] when assessing if there are 'extraordinary and compelling reasons" supporting release.'").

All of the above courts found "extraordinary and compelling reasons" were not limited to situations analogous to those outlined in Application Note 1(A)-(C).  And even though Congress did not make section 403 of the First Step Act retroactive, the Courts found individuals laboring under outdated mandatory stacked § 924(c) sentences deserved a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).

The case of *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020), is particularly illustrative.  Depa Maumau was convicted of a 924(c) offense and sentenced to 57 years in prison.  *Id.* at *1.  After serving approximately ten years, Mr. Maumau filed a motion to reduce his sentence

7

pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id.* After considering the motion, the district court concluded that Mr. Maumau had demonstrated "extraordinary and compelling reasons" entitling him to compassionate release which included his "young age, the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment." *Id.* at *7. The *Maumau* court went on to note that even if "the phrase 'extraordinary and compelling reason' has not historically been interpreted to include exceedingly long sentences is an unpersuasive reason to exclude such an interpretation today." *Id.* at *6.

Here, as in *Maumau*, Mr. Alvarez-Chavez was sentenced at a "young age". Additionally, both Mr. Alvarez-Chavez and Mr. Maumau received lengthy mandatory sentences and both, if sentenced today, would not have necessarily received such. But, unlike Mr. Maumau, who served only 10 years of his sentence, Mr. Alvarez-Chavez has served approximately 27 years of his. These facts, coupled with Mr. Alvarez-Chavez's record of good behavior and documented serious health issues, particularly in the time of COVID-19, all provide "extraordinary and compelling" reasons for release, just as they did in *Maumau*.

Additionally, while *Maumau* and the other cases noted above involved § 924(c) cases, other courts have also found a change in mandatory minimum sentencing requirements in drug cases to constitute an extraordinary and compelling reason for relief. In *Cantu-Rivera*, for example, the defendant requested compassionate release after receiving a life sentence for cocaine distribution. No. CR H-89-204, 2019 WL

2578272, at *2 n. 1 (S.D. Tex. June 24, 2019). There, the judge explicitly determined one of the factors constituting extraordinary and compelling reasons in the case was "the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendants prior convictions." *Id.* at *2; *see also United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719 at *1 (D. Kan. Mar. 11, 2020).

One of the most analogous cases to this one, however, is that of *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020). In that case, Jesus Mondaca, was convicted of conspiracy to possess cocaine with the intent to distribute. *Id.* at *1. And because he had at least two prior drug convictions out of the state of California and the prosecutor had filed for a §§ 841(b) enhancement, Mr. Mondaca received a life sentence; Mr. Mondaca also faced an enhanced sentence because he was considered a career offender. *Id.* According to the PSR in his case, Mr. Mondaca had been "actively engaged in drug trafficking since at least the mid to late 1970's" and that Mr. Mondaca had admitted that he wanted to kill an informant in his case. *Id.* at *2.

In early 2020, Mr. Mondaca filed a petition for compassionate release. *Id.* Among the many factors listed in his petition, Mr. Mondaca included his age, declining health, time in custody, and any other extraordinary and compelling reason. *Id.* The district court granted Mr. Mondaca relief. And, although the court considered many things in making its determination, the Court specifically noted the "discrepancy between the

9

sentence [the d]efendant received in 1991 and the sentence he would receive if judgment were pronounced today." *Id.* at *5.

Here, as in *Mondaca*, Mr. Alvarez-Chavez was also sentenced to life in prison in the early 1990s. And, like the defendant in *Mondaca*, Mr. Alvarez-Chavez had prior drug-related criminal history out of California that qualified him as a career offender, as well as some bad facts in his PSR.[1] Nonetheless, both Mr. Alvarez-Chavez and Mr. Mondaca are both older. They both suffer from serious health issues, and both men spent extensive time in custody. Most importantly to this memorandum, however, both men received life sentences in the 1990s but would likely not have received such draconian sentences today.

Comparable to *Mondaca* is the May 7, 2020 compassionate release grant in *United States v. Barrenechea*, No. 92-CR-00403-MMC-3, 2020 WL 2315638 (N. D. Cal., May 7, 2020). In that case, the defendant was convicted of one count of conspiracy to distribute cocaine and one count of possession with intent to distribute cocaine. *Id.* He was sentenced to a term of life imprisonment. *Id.* Analyzing whether "extraordinary and compelling reasons" existed to grant compassionate release under 18 U.S.C. 3582(c)(1)(A)(i), the district court held that the defendant was entitled to a sentence reduction for the following reasons: (1) the defendant's "life sentence for nonviolent drug offenses in which, at the time of sentencing, he was found to be a minor participant; (2) the provisions of the First Step Act of 2018, which, although not retroactive to sentences

---

[1] It should be noted, however, that Mr. Mondaca's PSR contained information relating to violent threats; there does not appear to be any such information in Mr. Alvarez-Chavez's case file.

10

imposed before its enactment, lowered from life to 25 years, the mandatory minimum applicable to the offenses for which [the defendant was convicted"; (3) the 27 years the defendant had served in prison for the offense; (4) that other co-defendants had received less time; (5) the defendant's record of rehabilitation and (6) the defendant's age and its association with an increased risk of contracting COVID-19.

Like the defendant in *Barrenechea*, Mr. Alvarez-Chavez was sentenced to life for a non-violent drug offense and the First Step Act modified his life sentence had he committed the same crime today. Both men served 27 years in prison for their offenses, both have a record of rehabilitation while in prison, and both defendants' ages put them at increased risk for COVID-19. And, in addition to his age, Mr. Alvarez-Chavez also suffers from multiple serious health conditions which further exacerbate his risk in the prison system.

And so here, too, the Court should find extraordinary and compelling reasons exist to reduce Mr. Alvarez-Chavez's sentence due to the change in law whereby he would no longer be facing a mandatory life sentence had he committed his crime today, instead of in 1992. This change in the law, in addition to all of the other reasons argued in the motion for compassionate relief, as well as in the reply brief, provides "extraordinary and compelling" reasons for the Court to allow Mr. Alvarez-Chavez to go home to his family.

**C. A court's disagreement with a sentence can also provide an "extraordinary and compelling" reason for release.**

In addition to finding that a change in sentencing law can constitute an "extraordinary and compelling" reason to reduce a sentence, this Court can also reduce

11

Mr. Alvarez-Chavez's sentence if it disagrees with the sentence originally imposed.  In *United States v. Haynes*, for example, the district court for the Eastern District of New York addressed whether a defendant convicted of bank robbery at the age of 23 who had been sentenced to 46 and a half years in prison deserved to be released under the compassionate relief statute. No. 93 CR 1043 (RJD), 2020 WL 1941478, at *2 (E.D.N.Y. Apr. 22, 2020).  At issue, among other things, was the fact that the defendant in Haynes had received such a steep sentence as a penalty for going to trial when his clearly more culpable co-defendant took a plea bargain and received substantially less time.  *Id.* at *3. After much analysis, the court concluded that the defendant was entitled to a sentence reduction because the "brutal impact of [his] original sentence, its drastic severity as compared to [that of the] co-defendant . . ., its harshness as compared to sentences imposed on similar and even more severe criminal conduct today, and the extent to which the brutal sentence was a penalty for [the defendant's] exercise of his constitutional right to trial" all constituted "extraordinary and compelling" circumstances warranting relief under § 3582(c).  *Id.* at *15.

Under the authority noted in *Haynes*, this Court is able to do the same.  If this court concludes that Mr. Alvarez-Chavez's sentence was too harsh, or that he was punished for going to trial instead of pleading, this Court can do what the *Haynes* court did and find these things to be "extraordinary and compelling" reasons for compassionate release.  Mr. Alvarez-Chavez asks the Court to do that, and release him to spend the last portion of his life at home with his family.

**Conclusion**

The law has changed since Mr. Alvarez-Chavez was sentenced. Had he committed the very same crime for which he was convicted in 1992 today, he would not have received a mandatory life sentence. This fact alone is an extraordinary and compelling reason to reduce his sentence to the 27 years of time served he has completed to date. This, coupled with all of the reasons argued in Mr. Alvarez-Chavez's original petition for compassionate relief, as well as in the reply brief, give the Court ample reason to release Mr. Alvarez-Chavez. As explained in more detail in the reply brief submitted on May 6, 2020, Mr. Alvarez-Chavez suffers from a host of serious health issues including diabetes, kidney failure, and hypertension and is also in remission for cancer. The government acknowledges that he should be "commended for his record of good behavior" while in prison. Mr. Alvarez-Chavez advises other inmates on how to adapt to prison life. And he has maintained a strong support network of family members who stand ready to support him upon his reentry to society.

This Court has authority, for all of the reasons above and also for the reasons outlined in the reply brief, to correct the injustice of Mr. Alvarez-Chavez's life sentence. Consistent with rulings from judges across the country, the Court can grant compassionate release because the disparity between Mr. Alvarez-Chavez's sentence and the sentence he would face today for the same conduct constitute "extraordinary and compelling reasons" for a sentence reduction. Or the Court can grant compassionate release because, as in *Haynes*, the Court disagrees with the original sentence imposed.

Finally, this Court can reduce Mr. Alvarez-Chavez's sentence because his plethora of serious health issues, in the time of COVID-19, are also extraordinary and compelling reasons to warrant his release. Any or all of these options requires the Court to conduct a full analysis under 18 U.S.C. § 3553(a) to determine the sentence that is sufficient but not greater than necessary. And in doing so, the Court can, and should, reduce Mr. Alvarez-Chavez's sentence to time served, which amounts to approximately 27 years in custody for a crime he committed in the early 1990s.

RESPECTFULLY SUBMITTED this 15th day of May, 2020.

JON M. SANDS
Federal Public Defender

*s/ Elena M. Kay*
ELENA M. KAY
Assistant Federal Public Defender

Copy delivered electronically this date to:

Seth Goertz
Assistant United States Attorney